**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **EDWARD SHAPIRO,**<br>on behalf of himself an all others<br>similarly situated, | |
| | **Case No.  1:20-cv-03123** |
| Plaintiff, | |
| v. | DEMAND FOR JURY TRIAL |
| **ONEAMERICA FINANCIAL<br>PARTNERS, INC.,** | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Edward Shapiro, on behalf of himself and all others similarly situated, brings this action against Defendant OneAmerica Financial Partners, Inc. ("OneAmerica" or "Defendant") to obtain damages, restitution, and injunctive relief for the Class, as defined below, from the Defendant. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record.

## <u>NATURE OF THE ACTION</u>

1.     This class action arises out of the recent cyberattack and data breach involving OneAmerica (the "Data Breach"), which collected and stored certain personally identifiable information ("PII") of the Plaintiff, and the putative Class Members, all of whom have PII on OneAmerica servers.

2.     The PII compromised in the Data Breach included highly-sensitive information including, but not limited to: first and last names, addresses, dates of birth, usernames, passwords, email address, states of residence, and Social Security numbers.

3.    The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' PII.

4.    Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

5.    In addition, OneAmerica and its employees failed to properly monitor and secure the computer network and systems that housed Plaintiff's and Class Members' PII.

6.    Defendant maintained the PII in a reckless manner. In particular, the PII was maintained on OneAmerica's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendant and thus Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

7.    Defendant disregarded the rights of Plaintiff and Class Members (defined below) by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Class Member PII; and failing to take standard and reasonably available steps to prevent the Data Breach.

8.    Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the PII that Defendant collected and maintained is now in the hands of

data thieves.

9.  Armed with the PII accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

10.  As a result of the Data Breach, Plaintiff and Class Members face a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to detect, guard against, and remediate identity theft and fraud.

11.  Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

12.  Through this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose PII was accessed during the Data Breach.

13.  Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

14.  Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct, and asserting claims for: (i) negligence; (ii) breach of express contract; (iii)

breach of implied contract; (iv) intrusion upon seclusion/invasion of privacy; and (v) breach of confidence.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are more than 100 members of the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and members of the Proposed Class, including Plaintiff, are citizens of states different from OneAmerica.

16.    Defendant OneAmerica is an Indiana corporation with its principal place of business in Indianapolis, IN.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1). Defendant resides in this District for jurisdictional and venue purposes.

## PARTIES

18.    Plaintiff Edward Shapiro is and at all times mentioned herein was an individual citizen of the Commonwealth of Pennsylvania, residing in the city of Philadelphia. Plaintiff received notice of the Data Breach on or about October 16, 2020. A copy of the notice Plaintiff received is attached hereto as Exhibit A (the "Notice Letter").

19.    OneAmerica is an Indiana Corporation with its principal place of business at One American Square, P.O. Box 368, Indianapolis, IN 46206.

## STATEMENT OF FACTS

### A.  Nature of Defendant's Businesses

20.    OneAmerica is a financial company that provides a wide range of products and services to customers, including retirement products, life insurances and annuities, asset-based

long-term care, and employee benefits.

21.     In the ordinary course of his role as a banquet server at the Society Hill Sheraton, which in turn utilized One America for its employee and retirement benefits, Plaintiff provided PII to Defendant, including his name, address, date of birth, bank account information, username, password, email address, and Social Security number.

22.     In the ordinary course of their relationship with OneAmerica, Class members, who are also employees of companies and organizations utilized OneAmerica for their employee and retirement benefits, provided and were required to provide PII to OneAmerica including their names, addresses, dates of birth, username, passwords, email addresses, and Social Security numbers.

23.     OneAmerica maintains this PII on its servers and within its data infrastructure.

24.     OneAmerica has established a Privacy Policy wherein it details the PII it collects through its website and its standards to maintain the security and integrity of such data.[1]

25.     The aim of the Privacy Policy is to provide adequate and consistent safeguards for the handling of employment data by OneAmerica.

26.     OneAmerica agreed to and undertook legal duties to maintain and communicate the PII entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

27.     OneAmerica agreed to and undertook legal duties to use the PII entrusted to it only for the agreed upon purposes and to protect the PII in its possession from unauthorized access, disclosure, or use.

28.     OneAmerica held the PII it collected on computer servers at a currently unknown

---

[1] *Privacy Statement*, OneAmerica, https://bit.ly/37AfNOH (last visited Dec. 2, 2020).

location.[2]

29.     The PII held by OneAmerica in its computer systems and networks included the PII of Plaintiff and Class Members.

**B.  The Data Breach**

30.     On September 23, 2020, OneAmerica produced a report containing PII and delivered it to an incorrect "retirement plan" serviced by one of OneAmerica's subsidiaries. The information was received by an incorrect, "trusted contact for another organization." This "contact" obtained PII from Plaintiff and the Class Members.

31.     OneAmerica claims that it learned of the Data Breach on September 24, 2020. OneAmerica further states that the information breach was "promptly brought . . . to our attention." It claims to have "thoroughly investigated [the incident]". OneAmerica notes that they "do not anticipate that . . . information will be used for unauthorized or malicious purposes" although as discussed below, it is impossible to say for certain that the PII obtained was not used inappropriately, maliciously, or distributed or obtained by other unauthorized parties.

32.     The data and files exfiltrated from OneAmerica's computer servers included the PII of Plaintiff and Class Members, including full names, addresses, dates of birth, passwords, usernames, and Social Security numbers.

33.     On or about October 16, 2020 (nearly a month after the breach occurred), One America notified Plaintiff of the Data Breach. However, OneAmerica only provided notice that the Data Breach occurred and offered no assurances of a remedy beyond offering widely-available credit monitoring services.

---

[2] *See* Ex. A, Notice Letter.

34.     Upon information and belief, OneAmerica has not notified the Indiana Attorney General of the breach, in violation of the Disclosure of Security Breach law set for Indiana businesses.[3]

35.     As a result of OneAmerica's disclosures, OneAmerica offered one (1) year of credit monitoring without cost to those who received the Notice Letter, including Plaintiff. Such limited credit monitoring is grossly inadequate.

**C.  OneAmerica's Privacy Policy**

36.     OneAmerica had an obligation created by contract, industry standards, common law, and representations made to Plaintiff and Class Members, to keep Plaintiff's and Class Members' PII confidential and to protect it from unauthorized access and disclosure.

37.     Plaintiff and Class Members provided their PII to OneAmerica with the reasonable expectation and mutual understanding that OneAmerica would comply with its obligations to keep such information confidential and secure from unauthorized access.

38.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the last few years.

39.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service often issue a warnings to potential targets so they are aware of, and prepared for, a potential attack, with widespread advisories sent as recently as late October 2020.[4]

40.     Therefore, the increase in such attacks, and attendant risk of future attacks, was

---

[3] *Identity Theft Prevention*, Indiana Attorney General, https://bit.ly/3myG1Yl (last accessed Dec. 2, 2020).
[4] Kurton,T., Mehrotra, K, & Tozzi, J., *FBI, DHS Warn Hospitals of 'Credible Threat' From Hackers*, Bloomberg Cybersecurity (Oct. 28, 2020), https://bloom.bg/3mFwsGW.

widely known to the public.

41.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data infrastructure. Defendant's unlawful conduct includes, but is not limited to, its failure to:

a.     maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

b.     adequately protect the PII OneAmerica collected and maintained on its systems;

c.     maintain PII in a manner that is secure and protected against unauthorized access, disclosure, or theft;

d.     properly monitor its own data security systems for existing intrusions;

e.     confirm its security systems are being used appropriately by properly-trained staff and others given permission to use it;

f.     safeguard against the loss or breach of data caused by internal recklessness; and

g.     ensure that vendors with access to payroll data employed reasonable security procedures.

42.     As the result of inadequate data security practices, computer systems in need of security upgrading, inadequately trained employees, and failure to comply with industry standards regarding data security, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII.

43.     Due to Defendant's incompetent security measures, Plaintiff and the Class Members now face an increased risk of fraud and identity theft and must deal with that threat

forever.

**D. Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft**

44.    The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[5]

45.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201 (2013). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, an individual's name, Social Security number, and date of birth. *Id.*

46.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[6]

47.    Social Security numbers are among the worst types of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult, if not impossible, for an individual to change.

---

[5] *See* U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 2 (2007), https://bit.ly/2JJeN2C ("GAO Report").

[6] *See Identity Theft Recovery Steps*, Federal Trade Commission, https://bit.ly/33Jf0tP (last visited Dec. 3, 2020).

48.    Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

49.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

50.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

51.    Even then, a new Social Security number may not be effective. According to the Identity Theft Resource Center: "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[7]

52.    Based on the foregoing, the information distributed in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm

---

[7] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), https://n.pr/36AMsV5.

by cancelling credit or debit cards and obtaining replacements. The information stolen in OneAmerica's Data Breach—including name, date of birth, Social Security number, and medical information—is difficult, if not impossible, to change.

53.    Accordingly, this data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[8]

54.    A study by Identity Theft Resource Center shows the multitude of negative impacts caused by fraudulent use of personal and financial information: 86% of respondents were "worried, angry, and frustrated"; 84% felt "violated"; 70% felt they "could not trust others"; 67% felt "helpless"; a majority felt depressed and betrayed; and over 75% of respondents felt either increased stress, problems sleeping, or other physical symptoms of distress following the breach.[9]

55.    What's more, theft of PII is also gravely serious. PII is a valuable property right.[10] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

---

[8] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World (Feb. 6, 2015), https://bit.ly/3lF0I3q.

[9] Jason Steele, *Credit Card Fraud and ID Theft Statistics*, Creditcards.com (Oct. 23, 2020), https://bit.ly/2L5uvG5 (last visited Dec. 3, 2020).

[10] *See, e.g.,* John T. Som, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

56.     It must also be noted there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and also between when PII and/or financial information is compromised and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at 29.

57.     PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

58.     There is a market for Plaintiff's and Class Members PII, and the stolen PII has inherent value that is derived, in large part, from the fact that the PII is immutable.

59.     That, upon information and belief, OneAmerica has not even notified the Indiana Attorney General, in flagrant violation of the state law, is outrageous. There is no notice of the breach on OneAmerica's website or Twitter account. OneAmerica's Facebook page also did not disclose the breach.

60.     Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members must spend time and other resources vigilantly monitoring their financial accounts for many years to come.

## PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

61.     As a consequence of the Data Breach, Plaintiff's accounts were compromised

shortly thereafter.

62.    Plaintiff was aware that OneAmerica had been in charge of his 401(k) retirement account through his employer. Approximately one year before the breach occurred, Plaintiff removed all of his funds from the 401(k) account and closed the account out.

63.    Defendant OneAmerica no longer performed any role either requested by Plaintiff or that was beneficial to Plaintiff, and indeed with the removal of 401(k) funds Defendant OneAmerica should have had no obligation to hold onto Plaintiff's PII.

64.    Nevertheless, Defendant OneAmerica negligently allowed the integrity of its system to be undermined. As a consequence, Plaintiff's PII, still lingering in custody of Defendant OneAmerica, was compromised.

65.    Moreover, within two months of the Data Breach—and within one month from the date Plaintiff received notification of the Data Breach—Plaintiff was notified via email on November 19, 2020 that an unauthorized and unknown user made a recent unsuccessful attempt to access an account he had with his health insurance provider.

66.    To date, Defendant has done nothing to compensate Class Members for the damages they sustained in the Data Breach. Defendant has merely offered to provide identity monitoring services for an inadequate twelve (12) months "across the three major credit bureaus." This in itself is misleading, as OneAmerica only appears to offer credit monitoring through a single agency: Equifax, by way of their "Credit Watch$^{TM}$ Gold with 3-in-1 Credit Monitoring."

67.    Defendant's offer is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and it entirely fails to provide any compensation for the unauthorized

release and disclosure of Plaintiff's and Class Members' PII.

68.    Furthermore, OneAmerica's credit monitoring offer squarely places the burden on Plaintiff and Class Members, rather than on the Defendant, to investigate and protect themselves from Defendant's contract breaches and tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiff and Class Members in credit monitoring services upon discovery of the breach, Defendant merely sent instructions to Plaintiff and Class Members about actions they can affirmatively take to protect themselves.

69.    Plaintiff and Class Members have been damaged by the compromise and exfiltration of their PII in the Data Breach.

70.    Plaintiff's PII was as a direct and proximate result of the Data Breach.

71.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

72.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time and other resources dealing with the effects of the Data Breach.

73.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft. These dangers are not merely hypothetical, they are exactly why data breaches have grown so popular. Cyber criminals and identity thieves seek out this information in order to turn it into monetary gain for themselves at the expense of the Class Members because they know how valuable this information is.

74.    Plaintiff and Class Members face a substantial and imminent risk of being targeted for future phishing, data intrusion, and other illegal schemes to steal or use their PII as fraudsters could use the compromised PII to more effectively target such schemes to Plaintiff and Class Members.

75.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

76.    Plaintiff and Class Members also suffered a loss of value of their PII when it was disclosed to unauthorized individuals in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

77.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a.    finding fraudulent charges;

b.    canceling and reissuing credit and debit cards;

c.    purchasing credit monitoring and identity theft prevention;

d.    addressing their inability to withdraw funds linked to compromised accounts;

e.    taking trips to banks and waiting in line to obtain funds held in limited accounts;

f.    placing "freezes" and "alerts" with credit reporting agencies;

g.    spending time on the phone with or at a financial institution to dispute fraudulent

charges;

h.  contacting financial institutions and closing or modifying financial accounts;

i.  resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j.  paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k.  reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

78.  Moreover, Plaintiff and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of the Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online and that access to such data is encrypted and/or password-protected.

79.  Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their PII may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

80.  As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased and imminent risk of future harm.

81.  Defendant's delay in reporting the Data Breach caused additional harm. It is axiomatic that "[t]he quicker a financial institution, credit card issuer, wireless carrier or other service provider is notified that fraud has occurred on an account, the sooner these organizations

can act to limit the damage. Early notification can also help limit the liability of a victim in some cases, as well as allow more time for law enforcement to catch the fraudsters in the act" [11] or for victims to take preventative measures required to remediate the imminent risk of fraud and identity theft created by the breach.

82.    Indeed, once a Data Breach has occurred, "[o]ne thing that does matter is hearing about a Data Breach quickly. That alerts consumers to keep a tight watch on credit card bills and suspicious emails. It can prompt them to change passwords and freeze credit reports. . . . If consumers don't know about a breach because it wasn't reported, they can't take action to protect themselves." [12]

83.    Here, Defendant became aware of the Data Breach within a single day of the instance. However, Defendant waited almost an entire month before notifying affected parties. Further, Defendant made no public admission of this breach nor posted it conspicuously so that affected persons who Defendant may not have been able to reach directly were put on notice of the breach. Defendant's conduct is inexcusable.

## CLASS ACTION ALLEGATIONS

84.    Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated (the "Class") pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

---

[11] *Identity Fraud Hits Record High with 15.4 Million U.S. Victims in 2016, Up 16 Percent According to New Javelin Strategy & Research Study*, Business Wire, https://bwnews.pr/2I99rgP (last accessed Dec. 3, 2020).

[12] Allen St. John, *Consumer Reports, The Data Breach Next Door: Security Breaches Don't Just Hit Giants Like Equifax and Marriott. Breaches at Small Companies Put Consumers at Risk, Too* (Jan. 31, 2019), https://bit.ly/3ogHuCU (internal citations omitted).

85.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons whose PII was compromised in the Data Breach disclosed by OneAmerica on or about September 23, 2020 (the "Class").

86.     Plaintiff proposes the following Subclass definition, subject to amendment as appropriate:

> All persons in the Commonwealth of Pennsylvania whose PII was compromised in the Data Breach disclosed by OneAmerica on or about September 23, 2020 (the "Subclass").

87.     Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

88.     Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery. The proposed Class meets the criteria for certification under Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4).

89.     <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of at least thousands of people whose data was compromised in the Data Breach.

90.     <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common question of law and fact include, without limitation:

a.  Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

b.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.  Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.  Whether Defendant owed a duty to Class Members to safeguard their PII;

f.  Whether Defendant breached its duty to Class Members to safeguard their PII;

g.  Whether computer hackers obtained Class Members' PII in the Data Breach;

h.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i.  Whether Defendant's conduct was negligent;

j.  Whether Defendant's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

k.  Whether Defendant failed to provide notice of the Data Breach in a timely manner; and

l.  Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

91.  <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because

Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach.

92.     Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

93.     Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

94.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

95.     Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

96.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.    Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and safeguarding their PII;

    b.    Whether Defendant's data security practices were reasonable in light of best practices recommended by data security experts;

    c.    Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

    d.    Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

    e.    Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

97.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. At least some Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

### FIRST COUNT
**Negligence**
**(On behalf of Plaintiff, the Class, and the Subclass)**

98.    Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully

set forth herein.

99.    Plaintiff and Class Members were required to submit PII to OneAmerica in order to receive payment.

100.   By collecting and storing this data in OneAmerica's computer property, OneAmerica had a duty of care to use reasonable means to secure and safeguard the PII it collected and maintained in order to prevent unauthorized disclosure, access, or use of the information, and to safeguard the information from theft.

101.   OneAmerica owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII from unauthorized access or disclosure.

102.   OneAmerica had duty of care to use reasonable security measures because it was in a position to ensure that the PII entrusted to it was protected against the foreseeable risk of harm to Class Members from a data breach.

103.   OneAmerica's duty to use reasonable care in protecting confidential data also arose also because it is bound by industry standards to protect confidential PII.

104.   OneAmerica breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by OneAmerica include, but are not limited to, the following:

a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b.    Failure to periodically ensure that it had effective employee training and data security processes in place to maintain reasonable data security safeguards and to

protect PII;

    c.   Allowing unauthorized access to Class Members' PII; and

    d.   Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

105.   It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members.

106.   It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

107.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

108.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## SECOND COUNT
### Breach of Contract
### (On Behalf of Plaintiff, the Class, and the Subclass)

109.   Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

110.   Defendant's privacy policy forms a binding contract between Defendant and the Class Members when they gave their PII to Defendant.

111.   The Privacy Policy promised that OneAmerica would take reasonable steps to protect Plaintiff's and Class Members' PII from unauthorized access, disclosure, use, or theft.

112.   The Privacy Policy promised that OneAmerica would share Plaintiff's and Class Members' PII only as permitted by the parties' agreement or as required by law.

113.   Defendant breached these and other provisions of the contracts in that it did not have any measures to stop accidental loss or alteration or unauthorized access to protect Plaintiff's and Class Members' Personal Information, and did not limit access to that information to the specified individuals or entities. Defendant violated its commitment to maintain the confidentiality and security of the PII of Plaintiff and the Class Members and failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

114.   The September 23, 2020 Data Breach, first disclosed to the Class Members on October 16, 2020, is a direct and legal cause of the injuries and damages suffered by Plaintiff and the Class Members.

115.   As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure, and publication of their PII, the loss of control of their PII, the imminent risk of suffering additional damages in the future, and out-of-pocket expenses.

116.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

### THIRD COUNT
**Breach of Implied Contract**
**(On Behalf of Plaintiff, the Class, and the Subclass)**

117.   Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

118.    To the extent Defendant's privacy policy did not form an express contract, the course of conduct between and among Defendant and Class Members created implied contracts between Defendant and the Class Members.

119.    Defendant offered, solicited and invited Class Members to provide their PII as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

120.    There was a meeting of the minds between the parties, and Defendant manifested its intent to enter into an implied contract that included a contractual obligation to reasonably protect Plaintiff's and Class Members' PII through, among other things, its Privacy Notice.

121.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

122.    Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of the implied contracts between them and Defendant to keep their information reasonably secure. Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

123.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

124.    Defendant breached such implied contracts by failing to adhere to the terms of its privacy policy, violated its commitment to maintain the confidentiality of the PII of the Class Members, and failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security.

125. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure, and publication of their PII, the loss of control of their PII, the imminent risk of suffering additional damages in the future, and out-of-pocket expenses.

126. Had Defendant disclosed that its data security was inadequate or that it did not adhere to industry-standard security measures, neither the Plaintiff, the Class Members, nor any reasonable person would have turned over their PII to Defendant.

127. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

## FOURTH COUNT
### Intrusion Upon Seclusion / Invasion of Privacy
### (On behalf of Plaintiff, the Class, and the Subclass)

128. Plaintiff repeats and re-alleges each and every allegation contained in all paragraphs above as if fully set forth herein.

129. The Restatement (Second) of Torts states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).

130. Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in the PII Defendant mishandled.

131. Plaintiff and Class Members were entitled to the protection of their PII against unauthorized disclosure, access, or use.

132.    OneAmerica owed a duty to Plaintiff and the Class Members to securely maintain their PII.

133.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and Class Members, especially where the information includes Social Security numbers, would be highly offensive to a reasonable person.

134.    The intrusion was into a place or thing that was private and is entitled to be private. Plaintiff and Class Members disclosed their PII to OneAmerica privately and with the intention that the PII would be kept confidential and would be protected from unauthorized access, disclosure, or use.

135.    Plaintiff and Class Members were reasonable to believe that their PII would be kept private and would not be disclosed without their authorization.

136.    The Data Breach constitutes an intentional interference with Plaintiff and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

137.    As a proximate result of OneAmerica's acts and omissions, the PII of Plaintiff and the Class was disclosed to unknown third parties without authorization, causing Plaintiff and Class members to suffer damages.

138.    Plaintiff seeks an award of damages on behalf of himself and the Class.

139.    Unless and until enjoined and restrained by order of this Court, OneAmerica's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PII entrusted to OneAmerica can be viewed, distributed, and used by unauthorized persons.

140.   Plaintiff and Class Members have no adequate remedy at law for the injuries they suffered, as a judgment for monetary damages alone will not end the invasion of privacy for Plaintiff and the Class.

### FIFTH COUNT
**Breach of Confidence**
**(On behalf of Plaintiff and the Class)**

141.   Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

142.   At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII that Plaintiff and Class Members provided to Defendant.

143.   As alleged herein and above, Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PII would be collected, stored, maintained, and protected in confidence, and would not be disclosed to unauthorized third parties.

144.   Plaintiff and Class Members provided their respective PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized parties.

145.   Plaintiff and Class Members also provided their PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure, such as following basic principles of protecting its networks and data systems, including employees' email accounts.

146.   Defendant voluntarily received in confidence Plaintiff's and Class Members' PII with the understanding that PII would not be disclosed or disseminated to the public or any

unauthorized third parties.

147.    Due to Defendant's failure to prevent the Data Breach from occurring by, *inter alia*, following best information security practices to secure Plaintiff's and Class Members' PII, Plaintiff's and Class Members' PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

148.    As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class Members have suffered damages.

149.    But for Defendant's disclosure of Plaintiff's and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, or used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' PII, as well as the resulting damages.

150.    The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' PII. Defendant knew its computer systems and technologies for accepting and securing Plaintiff's and Class Members' PII had numerous security vulnerabilities.

151.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

   i.    actual identity theft;

   ii.    the compromise, publication, and/or theft of their PII;

   iii.    out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII;

   iv.    lost opportunity costs associated with effort expended and the loss of productivity

addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft;

v.   the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession;

vi.   future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members;

vii.   the diminished value of Defendant's services they received; and

viii.   the diminished value of Plaintiff's and Class Members' PII.

152.   As a direct and proximate result of Defendant's breaches of its duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a.   For an Order certifying this action as a class action and appointing Plaintiff and his counsel to represent the Class and Subclass;

b.   For equitable relief enjoining OneAmerica from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII;

c.   For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety,

and to disclose with specificity the type of PII compromised during the Data Breach;

d.     For an order requiring Defendant to pay for not less than seven years of credit monitoring services for Plaintiff and the Class;

e.     For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

f.     For an award of punitive damages, as allowable by law;

g.     For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

h.     Pre and post-judgment interest on any amounts awarded; and

i.     Such other and further relief as this court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all claims so triable.

Dated: December 3, 2020        Respectfully submitted,

                */s/Lynn A. Toops*
                Lynn A. Toops
                Lisa M. La Fornara
                **COHEN & MALAD, LLP**
                One Indiana Square, Suite 1400
                Indianapolis, IN 46202
                Tel: (317) 636-6481
                ltoops@cohenandmalad.com
                llafornara@cohenandmalad.com

                Jonathan Shub*
                Kevin Laukaitis*

**SHUB LAW FIRM LLC**
134 Kings Highway East, 2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Pro Hac Vice to be filed*

*Attorneys for Plaintiff and the Proposed Class*